LIZZIE SELLERS, Respondent, v. BRIDGET DEMPSEY, Appellant, Impleaded with JOHN DEMPSEY and Others.

*Negligence — a servant of a janitor injured by the fall of a lift — liability of the owner of the building — duty of inspection.*

The fall of a lift, constructed less than nine months before and used in part for the removal of ashes from the upper floors of an apartment house, in consequence of the breaking of a central rope by which the car was supported, which rope, although frayed to a point in one spot, was not known to the janitor to be defective, is not, in the absence of proof that the owner of the building knew, or was chargeable with knowledge, of the condition of the rope, sufficient evidence of negligence on her part to render her liable for injuries thereby occasioned to a servant not in her employ, but in that of her janitor, while such servant was operating the lift.

The fact that ropes were placed on both sides of the lift by which it could be raised and lowered, and that one of these ropes was out of order, necessitating the servant placing herself under the car while using the other rope, and that there existed a defect in a screw bolt securing the pulley over the car at the top of the shaft, of which latter defect the owner had notice, but which, however, in no way contributed to the accident, was not considered to create any liability on the part of the owner.

APPEAL by the defendant, Bridget Dempsey, from a judgment of the Supreme Court in favor of the plaintiff, and of the defendants, John Dempsey and others, entered in the office of the clerk of the county of New York on the 13th day of April, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 7th day of April, 1897, denying the said defendant's motion for a new trial made upon the minutes.

*M. P. O'Connor*, for the appellant.

*John F. Foley*, for the respondent.

PATTERSON, J.:

This is an appeal from a judgment in favor of the plaintiff and against the defendant, Bridget Dempsey, in an action brought to recover damages for injuries claimed to have been sustained by the plaintiff through the negligence of the defendant, and from an order denying a motion for a new trial. The action was originally

brought against Mrs. Dempsey and other defendants, who it was claimed were associated with her in the ownership of certain prem-ises upon which the accident occurred which resulted in the plain-tiff's injuries. The complaint was dismissed as to all the defendants other than Bridget Dempsey. It appeared in evidence that Mrs. Dempsey was, in a general sense, the owner of the premises referred to, and that she collected the rents thereof and had the general administration of the property. The premises consisted of an apart-ment or tenement house in which she employed a janitor by the name of O'Connell. It was his business to take care of the house and, as he himself testified, among other things, to collect and remove the ashes from various apartments in the building. As an appliance for the accomplishment of that purpose, there was in the building a dumb waiter used as a lift, which was operated by hand by means of two ropes; one at the right side of the car, by pulling which the car was raised, and the other at the left side, by the use of which the car was lowered. It appears that the whole of this apparatus was put new into the building in January, 1894. In September, 1894, this plaintiff was employed by the janitor as his servant and not as the servant of the defendant.

On the 14th of September, 1894, the plaintiff used the lift for the purpose of bringing down to the basement ashes from several floors of the apartment house; she stood on the basement floor; the rope on the right-hand side of the elevator was out of order and could not be used, and it had been so for about two weeks. She was, therefore, compelled to use both for pulling up and lowering the car the rope at the left side, in order to reach which it was necessary for her to put her head or some portion of her body into the elevator shaft. The car was at one of the upper stories; she leaned forward to pull the rope when the car fell and struck her on the head inflicting injuries more or less serious in their character. In addition to the two ropes mentioned, there was a third rope secured to the roof of the car, about the center of the roof, by which last-mentioned rope the car was held in place and upon which the weight of the car was sustained. That center rope passed through a pulley secured at the top of the shaft. There was a small screw bolt which was attached to the shaft, and which it was shown got worn out and loose so that it would not fit in, and that loosened the shaft. It was proven that

information of that particular defect was given to a son of the defendant, and it is quite clear that notice of it was brought home to the defendant Bridget Dempsey. The negligence attributed to the defendant is that she allowed the use on the premises of an unsafe apparatus which she furnished for the use of the tenants, the janitor and those whose business it might be to assist him in the removal of ashes from the upper stories of the house; but no other fact indicating an unsafe condition was shown than as above stated. It appeared clearly in evidence given on behalf of the plaintiff that the real cause of the fall of the elevator was not the defect above referred to, of which the defendant had notice, but was the fraying and wearing out of the center rope which broke at about three feet above the top of the elevator car, and of which condition of that rope not even the janitor knew until after the accident. The testimony as to that is very plain. The plaintiff was not the servant of the defendant, but was the servant of O'Connell, the janitor. Hence the defendant did not owe to the plaintiff that duty which a master would owe to a servant, but she did owe to the plaintiff the exercise of ordinary care and prudence in the management of her property, which included the duty of maintaining the property in such reasonable repair and good condition as a person of ordinary care and prudence would exercise with reference to the uses of the property and the circumstances under which it was enjoyed and used by the tenants or servants employed in the house. She owed the duty to keep this appliance in such repair that persons rightfully using it on the premises would be reasonably safe there. If the appliance fell into bad condition, the duty to repair or make it safe arose when notice of its condition was given or might be imputed to the defendant. It was shown that the elevator was out of order, but it was also clearly shown that the accident was not in any way caused by the only defective condition of which the defendant had notice. That defect, it was proven, had nothing whatever to do with the fall of the elevator. At the close of the plaintiff's case the defendant moved for a nonsuit on that ground. The motion should have been granted. There was not a word of proof to show that the defendant knew, or had notice, or could be chargeable with knowledge, of the condition of the center rope. The breaking of that rope was the sole cause of the accident. The only thing of which the defend-

ant had notice was the want of the bolt on the sheave that raised and lowered the elevator. That had nothing to do with the breaking of the central rope which sustained the weight of the car. As said before, it is entirely clear that it was the breaking of the central rope that caused the lift to fall. There was nothing to put the defendant on notice of that defect. It was the janitor's business to look after the lift and to use it. It was a mere appliance, a dumb waiter, serving the uses of an apartment house. There was no evidence to show the necessity of periodical inspections of such an apparatus. A duty of that kind resting upon the owner in this case is not shown. The evidence is insufficient to raise that question. This was not a passenger elevator, but merely a dumb waiter, operated by hand by a person standing on the floor outside the shaft in which the apparatus worked. The janitor states that the fact of this rope being frayed down to a point, he, whose duty it was to attend to the apparatus, observed for the first time after its fall. The apparatus was in his charge. " That (the rope) is what broke and what caused the elevator to fall. The absence of the bolt, which I speak of, had nothing to do with the fall. The fall was due directly to the breaking of the rope." In that state of the evidence, we think, it is apparent that the motion for nonsuit should have been granted. There was no proof to show the duty of inspection, and it was clearly proven that the lift fell from a cause unknown to the defendant and undetected by the janitor.

The judgment must, therefore, be reversed and a new trial ordered, with costs to appellant to abide event.

VAN BRUNT, P. J., INGRAHAM and MCLAUGHLIN, JJ., concurred; O'BRIEN, J., concurred in result.

Judgment reversed, new trial ordered, costs to appellant to abide event.